UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
NEW LAND INTERIORS CORP.,                      :
                                               :
                          Plaintiff,           :        25-CV-732 (DEH) (RWL)
                                               :
          - against -                          :
                                               :
                                               :        **ORDER:**
KINSALE INSURANCE COMPANY,                     :   **MOTION TO STAY AND COMPEL**
                                               :   <u>**ARBITRATION (Dkt. 11)**</u>
                          Defendant.           :
--------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

The instant dispute arises from a commercial general liability policy (the "Policy") issued by Defendant Kinsale Insurance Company ("Kinsale") to non-party Millennium Services, LLC ("Millennium"). Plaintiff New Land Interiors Corp. ("New Land") is not a signatory to the Policy but seeks defense and indemnity coverage as an additional insured in connection with a negligence lawsuit filed against it and others in state court. The Policy contains an arbitration clause requiring that "[a]ll disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a named insured, an insured, [or] additional insured, … shall be submitted to binding arbitration." (Dkt. 13-1 at ECF 26.) On March 25, 2025, Kinsale moved for an order compelling arbitration pursuant to the Policy and staying the instant action. (*See* Dkts. 11-13.) New Land opposed and argued that, as a non-signatory to the Policy, it cannot be compelled to arbitrate, and that, in any event, Kinsale waived its right to invoke the arbitration clause and has not otherwise met its evidentiary burden to authenticate the Policy. (*See* Dkt. 22.) For the reasons that follow, Kinsale's motion to compel arbitration is GRANTED and the case is STAYED pending arbitration.

1

**LEGAL STANDARDS**

**A.    The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") establishes procedures for enforcing arbitration agreements in federal court.  *See* 9 U.S.C. § 1 *et seq*.  The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21, 132 S. Ct. 23 (2011) (per curiam) (internal quotation marks and citation omitted).  The Court's inquiry when confronted with an agreement to arbitrate is narrow.  Unless otherwise provided for in the agreement, courts consider only threshold questions of arbitrability.  *Doctor's Associates, Inc. v. Alemayehu*, 934 F.3d 245, 250-51 (2d Cir. 2019).  Arbitrability is determined by a two-part test:  "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 128 (2d Cir. 2011).  In applying this test, courts must "construe arbitration clauses as broadly as possible."  *Id*.; *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

**B.    Evidentiary Standard**

Motions to compel arbitration are evaluated under a standard similar to summary judgment.  *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 (2d Cir. 2022); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  The movant must present competent evidence that an agreement to arbitrate exists; if that showing is made, the burden shifts to the opponent to come forward with specific evidentiary facts creating a

2

genuine dispute as to formation, validity, or applicability.  *Barrows*, 36 F.4th at 50; *Marino v. CVS Health*, 698 F. Supp.3d 689, 693-94 (S.D.N.Y. 2023).  If the "making" of the agreement is genuinely in issue, the court must proceed to a trial on that issue; otherwise, the court may decide arbitrability as a matter of law.  9 U.S.C. § 4; *Nicosia*, 834 F.3d at 229.  In applying that framework, courts consider all relevant, admissible materials and draw reasonable inferences in favor of the non-movant.  *Nicosia*, 834 F.3d at 229; *Marino*, 698 F. Supp.3d at 693.

## DISCUSSION

New Land asserts that it cannot be compelled to arbitrate for three reasons.  First, New Land argues Kinsale failed to meet its evidentiary burden in establishing that an arbitration clause governs the dispute.  Second, New Land argues that as a non-signatory to the Policy it cannot be compelled to arbitrate because any benefit it seeks is indirect. Third, New Land argues Kinsale waived its right to arbitration by failing to invoke the arbitration clause in a pre-litigation letter.  None of those arguments stand up to scrutiny. The Court addresses them in turn.

## A.    Kinsale Has Provided Sufficient Evidence Of A Valid Agreement

In support of its motion, Kinsale filed a declaration from outside counsel, Eridania Perez, presenting a copy of the applicable New Land Policy as an exhibit.  (Dkt. 13 ¶ 3 & Ex. A.)  New Land challenged the document's authenticity, arguing that Perez has no personal knowledge that the exhibit presented is the Policy at issue.  (*See* Dkt. 22 at 2-3.)

At the Court's request (Dkt. 24), Kinsale filed an additional declaration from Michael Matheson, Senior Claims Counsel at Kinsale, attaching endorsements to the

Policy and authenticating the Perez exhibit as "a true, accurate, authentic, and complete copy" of the Policy. (Dkt. 25 ¶¶ 1-9.) New Land was provided with an opportunity to respond to the Matheson Declaration but did not do so. (*See* Dkt. 24.)

With the Policy now authenticated by Matheson, New Land has not identified any evidentiary facts that create a genuine dispute as to the "making" of the arbitration agreement.

## B.    New Land Seeks A Direct Benefit Under The Kinsale Policy

New Land argues that it cannot be compelled to arbitrate because it is a non-signatory seeking indirect benefits under the Policy. (*See* Dkt. 22 at 3-8.) That argument is not persuasive.

Under New York law, a non-signatory may be estopped from avoiding an arbitration clause where it knowingly seeks or obtains direct benefits from the agreement that contains the clause; incidental or indirect benefits do not suffice.[1] *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020); *Life Technologies Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp.2d 270, 276 (S.D.N.Y. 2011). "[T]he 'guiding principle' of the theory 'is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause.'" *Trina Solar*, 954 F.3d at 572 (quoting *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626, 633, 977 N.Y.S.2d 685 (N.Y. 2013)).

---

[1] Estoppel is one of several theories by which a non-signatory may be bound by an arbitration agreement. *Mag Portfioli Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("There are five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel") (internal quotation marks omitted).

Indirect benefits are advantages a non-signatory gains from the broader business relationship or downstream effects of a contract, rather than rights that the contract itself confers on that non-signatory. *Id.* Because they are incidental to, or derivative of, the contracting parties' dealings, such indirect benefits do not support compelling arbitration under estoppel principles. *See, e.g.*, *id.* at 572-73 (holding non-signatory corporate parent not bound to arbitrate where it did not invoke contractual rights, and its benefit from receiving goods as result of contract between subsidiary and opposing party was relational, not a right under the sales contract); *National Union Fire Insurance Co. of Pittsburgh v. Beelman Truck Co.*, 203 F. Supp.3d 312, 323 (S.D.N.Y. 2016) (benefit deemed indirect where it stemmed from the overall commercial arrangement rather than a provision of the agreement); *Boroditskiy v. European Specialties LLC*, 314 F. Supp.3d 487, 496 (S.D.N.Y. 2018) (ancillary advantages from participation in a related business arrangement were not direct). For example, in *Developers Surety & Indemnity Co. v. Carothers Construction, Inc.*, the court refused to compel a surety to arbitrate under a subcontract it never signed because the surety's obligations arose from separate bonds; any benefit the surety derived from the subcontract was merely incidental to that underlying project relationship and therefore indirect. 320 F. Supp.3d 386, 396-97 (D. Conn. 2018).

In contrast to indirect benefits, direct benefits are conferred when a non-signatory invokes the contract to obtain a right it confers. *See Life Technologies,* 803 F. Supp.2d at 272 (non-signatory bound where it sought to enforce the agreement's rights); *McKenna Long & Aldridge, LLP v. Ironshore Specialty Insurance Co.*, No. 14-CV-6633, 2015 WL 144190, at *9 (S.D.N.Y. Jan. 12, 2015) (direct benefits are tangible and expressly

contemplated by the contract, such as coverage or payment rights under a policy). A non-signatory's attempt to obtain coverage, indemnity, or defense under an insurance contract, including as an additional insured, is a paradigm of seeking a direct benefit flowing from the policy itself. In *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, for example, the court held that by "seeking to enforce its indemnification rights as an additional insured under the policy," the plaintiff sought "to avail itself of the protection and direct benefits afforded by the policy" and thus was bound by the arbitration clause. 413 F. Supp.2d 182, 187 (E.D.N.Y. 2006); *see also Ohio Security Insurance Co. v. Kinsale Insurance Co.*, No. 24-CV-149, 2024 WL 5135737, at *4 (S.D.N.Y. Dec. 17, 2024) ("Courts have found nonsignatories to arbitration provisions in insurance policies to be bound by the provisions where the nonsignatories sought declarations that their insureds were 'additional insureds' under those policies and thereby entitled to coverage").

That is exactly the scenario presented here. New Land's complaint seeks defense and indemnity on the premise that New Land is an insured or additional insured under the Policy. (Dkt. 1 ¶ 21, Prayer For Relief.) In the complaint, New Land expressly identifies itself as an "insured or additional insured," and "seeks a declaration requiring Kinsale to defend and indemnify it on a primary and noncontributory basis … up to the limits of the Kinsale Policy." (Dkt. 1 ¶¶ 18, 21.) Those rights are the very direct benefits the Policy confers. *See Best Concrete,* 187 413 F. Supp.2d at 187; *Ohio Security Insurance Co.*, 2024 WL 5135737, at *4 (plaintiff sought direct benefit by seeking a "declaration from the Court that Kinsale is obligated to insure, defend, and indemnify [purported additional insureds] on a primary and noncontributory basis" and plaintiff's claim "depends entirely

6

on the scope of the Kinsale Policy's coverage provisions"); *Insurance Co. of Greater New York v. Kinsale Insurance Co.*, No. 23-CV-3577, 2023 WL 7736653, at *2 (S.D.N.Y. Nov. 15, 2023) (similar).  Equitable estoppel applies, and New Land is bound by the arbitration clause in the Policy.[2]  New Land may not accept the Policy's benefits while rejecting its arbitration provision.

New Land insists that any benefit it derives from the Policy is only indirect because the Policy's core rights run to the named insured, Millennium, and, at most, New Land seeks to enforce Kinsale's contractual obligations to that insured rather than to enforce rights of its own.  (Dkt. 22 at 5.)  Relying on cases about contribution and allocation among insurers, New Land likens itself to a co-insurer seeking equitable apportionment.  (Dkt. 22 at 5 (citing *Maryland Casualty Co. v. W.R. Grace & Co.*, 218 F.3d 204 (2d Cir. 2000) (stating that insurer's claims against co-insurer for defense and indemnity payment to joint insured were claims for contribution and not subrogation)).)  In the same vein, New Land misguidedly attempts to distinguish *Best Concrete* by asserting that the plaintiff there sought coverage directly under the policy, whereas here the relief New Land seeks arises only from the broader insured and insurer relationship.  (Dkt. 22 at 7.)

New Land's framing is meritless and contravenes its own complaint.  This is not a dispute between two insurers over equitable sharing; New Land is not a co-insurer, and it is not asking for allocation or contribution.  As described above, New Land's complaint expressly seeks primary, "noncontributory" defense and indemnity for itself as an "insured

---

[2] Other than disputing whether the arbitration provision applies to it as a non-signatory, New Land has not argued that the arbitration provision does not encompass the rights it seeks to invoke.  In other words, the subject matter of the dispute falls squarely within the broad arbitration provision.

or additional insured," which is the quintessential direct benefit the Policy confers.  (Dkt. 1 ¶¶ 18, 21.)  Additionally, the Policy's arbitration clause by its terms includes disputes about whether an entity or person is an additional insured.  (Dkt. 13-1 at ECF 26.)  *Best Concrete* is not distinguishable, and the co-insurer cases cited by New Land do not permit New Land to convert its direct demand for coverage (or a related judicial declaration) into an indirect benefit theory.  Equitable estoppel applies and prohibits New Land from demanding the direct benefits it seeks while rejecting the Policy's chosen forum for resolution of disputes.

## C.    Kinsale Did Not Waive Its Right To Arbitrate

New Land's remaining argument is that Kinsale waived its right to invoke the arbitration clause because it did not do so in pre-suit correspondence.  Before the Court can resolve that issue, however, it first must determine if the question of waiver is for the Court or the arbitrator.

The Supreme Court has distinguished between limited arbitrability questions for courts and "procedural" matters for arbitrators.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84, 123 S. Ct. 588 (2002).  Waiver generally is a question for the arbitrator.  *Id*.  However, the *type* of waiver asserted makes a difference.  One type of waiver is "waiver by litigation conduct," which turns on whether the party knowingly relinquished the right to arbitrate by acting inconsistently with that right during the course of litigation.[3]  *Doyle v. UBS Financial Services, Inc.*, 144 F.4th 122, 124 (2d Cir. 2025)

---

[3] To determine whether a party has waived arbitration by its litigation conduct, a court assesses, among other things, the timing, nature, and extent of a party's participation in litigation prior to invoking the right to arbitrate.  *Compare Alvarez v. Experian Information Solutions, Inc.*, 661 F. Supp.3d 18, 31-32 (S.D.N.Y. 2023) (finding no litigation conduct waiver where the movant announced its intent to compel four days after learning of the

(explaining that "a party 'knowingly relinquishes the right to arbitrate by acting inconsistently with that right,' including by first 'affirmatively seeking a resolution of its dispute in the district court'").  Waiver of that sort is for the court to decide.  *Id*. at 133; *see also Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp.3d 498, 527-28 (S.D.N.Y. 2024) ("whether a party has waived its right to arbitrate by litigating actively is not a procedural question presumptively reserved for the arbitrators but instead a question of arbitrability" for the Court, unlike "other forms of waiver") (internal quotation marks and citations omitted).

New Land, however, does not base its argument on Kinsale's litigation conduct. Nor could it.  Kinsale moved to compel arbitration at the earliest possible time:  before answering the complaint or otherwise engaging in motion practice.  Instead, New Land argues Kinsale waived arbitration through its pre-litigation conduct.  (Dkt. 22 at 8-9.) Specifically, Kinsale points to correspondence in February 2023 in which Kinsale disclaimed its duty to defend or indemnify New Land but did not invoke arbitration.  (Dkt. 13-2.)  New Land argues that in failing to inform it that any dispute under the Policy must be arbitrated, Kinsale exposed New Land to the risk of incurring unnecessary litigation expenses and waived the arbitration provision.  *Id*.  That argument has no merit.

Inasmuch as New Land's waiver argument focuses on pre-litigation conduct, the waiver issue is reserved for the arbitrator.  *See Howsam*, 537 U.S. at 84  ("the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotation marks, alterations, and citation omitted);

---

agreement, moved to compel two days later, and engaged in only limited pretrial activity) *with Doyle*, 144 F.4th at 131 (finding waiver where party sought merits relief in court and, after losing, pivoted to arbitration).

*Herman v. Katten Muchin Rosenman LLP*, No. 25-CV-3162, 2025 WL 2462725, at *2 (S.D.N.Y. Aug. 27, 2025) (where the alleged waiver "occurred prior to – and not because of – [the movant's] conduct litigating [the] claims," the "waiver argument is for the arbitrator, not the Court, to decide").

But even if the pre-litigation waiver argument were before the Court, it is meritless. As a matter of state contract law, waiver requires "a clear manifestation of an intent ... to relinquish [a] known right." *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006) (applying New York law). "[W]aiver should not be lightly presumed." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P.*, 7 N.Y.3d 96, 104, 817 N.Y.S.2d 606 (N.Y. 2006) (internal quotation marks omitted). "Mere silence, oversight or thoughtlessness in failing to object" is insufficient to support an inference of waiver. *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (quoting *Courtney-Clarke v. Rizzoli International Publications, Inc.*, 676 N.Y.S.2d 529, 529, 251 A.D.2d 13 (1st Dep't 1998)).

New Land cites no authority supporting its contention that failure by an insurer to invoke arbitration in a reservation of rights letter constitutes waiver under New York law. In fact, when faced with the same argument in *Greater New York Mutual Insurance Co. v. Kinsale Insurance Co.*, the First Department held otherwise: "that Kinsale disclaimed coverage [without mentioning arbitration] did not result in waiver of its right to arbitrate." 226 A.D.3d 408, 409, 208 N.Y.S.3d 161 (1st Dep't 2024); *see also Insurance Co. of Greater New York*, 2023 WL 7736653, at *3 (rejecting argument that "Kinsale waived its right to compel arbitration by delaying its request for arbitration and by repudiating

coverage" in a pre-suit letter where Kinsale invoked the arbitration clause soon after plaintiff filed suit).  Regardless, far from expressing a clear manifestation of intent to waive arbitration, Kinsale's correspondence expressly denies waiver of any rights:  "By this letter, Kinsale does not waive any of its rights nor does it waive any of the terms, conditions, or provisions of the Policy."  (Dkt. 13-2 at 10.)  As such, even if the issue were before the Court, there would be no legal or factual basis to infer waiver or entitle New Land to discovery on the issue.

**CONCLUSION**

For the foregoing reasons, Kinsale's motion to compel arbitration is GRANTED, and the case is STAYED.[4]  The parties shall file a joint status letter with the Court within five days after arbitration is concluded.  To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be either moot or without merit.  The Clerk of Court is respectfully directed to terminate the motion at Dkt. 11.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 12, 2025
       New York, New York

Copies transmitted this date to all counsel of record.

---

[4] In deciding whether to stay or dismiss a case following a district court's order to compel arbitration, the Supreme Court has held that "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts …. Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit."  *Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173 (2024) (holding that staying the court action is mandatory under FAA § 3 when requested by the moving party).